OPINION
{¶ 1} This matter is before the Court on the Notice of Appeal of Salvador Gomez Nunez, filed February 27, 2006. On December 8, 2004, following a trial to a jury and guilty verdicts on two counts of murder, each with a firearm specification, the trial court sentenced Nunez to fifteen years to life *Page 2 
life imprisonment for each murder count and three years for each firearm specification, to be served consecutively, for a total term of 36 years to life. The murders occurred on October 3, 1999, and Nunez returned to his native Mexico thereafter. Mexican authorities apprehended him in September, 2003, and detained him, pending his extradition to the United States, until July 2004. On Nunez's appeal, we affirmed his conviction and reversed and remanded the matter for resentencing, because the trial court failed to comply with R.C.2929.14(E)(4) and set forth its reasons for imposing consecutive sentences, and because the extradition agreement between the State of Ohio and Mexico allowed only two consecutive fifteen years to life terms of imprisonment. On January 24, 2006, the trial court resentenced Nunez to a term of fifteen years to life on each count of murder, to be served consecutively to each other, for a total of 30 years to life. Nunez asserts two assignments of error.
 {¶ 2} Nunez's first assignment of error is as follows:
 {¶ 3} "THE TRIAL COURT ERRED IN SENTENCING THE DEFENDANT TO CONSECUTIVE TERMS WHERE THE JUDGE ENGAGED IN FINDINGS OF FACT THAT WERE REQUIRED TO BE FOUND BY THE JURY AND NOT THE TRIAL JUDGE."
 {¶ 4} Nunez relies on State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856, which established a bright line rule that anypre-Foster sentence to which the statutorily required findings of fact applied (i.e. nonminimum, maximum and consecutive sentences), pending on direct appeal at the time that Foster was decided, must be reversed and remanded for resentencing, because judicial fact-finding violates a defendant's Sixth Amendment right to a trial by jury. The State argues that the doctrine of judicial estoppel should bar Nunez's argument.
 {¶ 5} In State v. Burgess, Montgomery App. No. 21315, 2006-Ohio-5309, Burgess, like Nunez, successfully appealed his sentence because the trial court did not make the statutorily required findings of fact *Page 3 
required findings of fact before imposing consecutive sentences, and we rejected the State's argument therein that Burgess was judicially estopped from challenging his sentence pursuant to Foster.
 {¶ 6} "`[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.'" (Internal citations omitted). "`This rule, known as judicial estoppel, `generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.' (Internal citations omitted). * * * [I]ts purpose is `to protect the integrity of the judicial process,' by `prohibiting parties from deliberately changing positions according to the exigencies of the moment.' * * *
 {¶ 7} "Courts have observed that `[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle.' (Internal citations omitted). Nevertheless, several factors typically inform the decision whether to apply the doctrine in a particular case: First, a party's later position must be `clearly inconsistent' with its earlier position. (Internal citations omitted). Second, courts must regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create `the perception that either the first or second court was misled[.]' (Internal citations omitted). * * * A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."Burgess.
 {¶ 8} The State directs our attention to two federal matters in which courts have considered and/or *Page 4 
and/or applied the doctrine of judicial estoppel in a criminal context. The authorities cited by the State however, have no application to Nunez's appeal. In Zedner v. U.S. (2006), 126 S.Ct. 1976,164 L.Ed.2d 749 the Supreme Court held that the defendant was not judicially estopped from challenging the excludability of a continuance under the Speedy Trial Act when the defendant had previously expressly waived his rights under the Act, determining that a defendant's prospective waiver of his Speedy Trial Act rights "for all time" was invalid.
 {¶ 9} In Thompson v. Calderon, (1997), 120 F.3d 1045, 97 Cal. Daily Op. Serv. 6442, the government argued different motive theories in the separate trials of two defendants charged with the same murder. The first defendant was convicted and sentenced on the theory that he raped the victim and then killed her to cover up his crime. Id. The second defendant was convicted and sentenced on the theory that he killed the victim, his ex-girlfriend, because he perceived her as obstacle to reconciling with his ex-wife. In finding a due process violation, the court determined that the "prosecutor manipulated evidence and witnesses, argued inconsistent motives, and at [one] trial essentially ridiculed the theory he had used to obtain a conviction and death sentence at [the other] trial." Id., at 1057. After the first defendant's state appeals from the rape and murder convictions and death sentence were unsuccessful, and after his federal habeas corpus petition resulted in his rape conviction being set aside but in a denial of his challenge to the murder conviction and death sentence, and after the court of appeals reversed the district court's grant of habeas relief, and after the United States Supreme Court denied a petition for writ of certiorari, and after the panel denied a motion to recall mandate and stay execution, the Ninth Circuit Court of Appeals reconsidered en banc whether to recall the mandate. The court, inter alia, remanded the first degree murder conviction for further consideration. *Page 5 
 {¶ 10} Like Burgess, Nunez has been sentenced under a section of the Ohio Revised Code that is now adjudged unconstitutional. Foster mandates that matters on direct appeal be reversed and remanded for resentencing in keeping with the Sixth Amendment right to a jury trial. Nunez's first assignment of error is sustained. Judgment reversed and remanded for resentencing.
 {¶ 11} Nunez's second assignment of error is as follows:
 {¶ 12} "THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR JAIL TIME CREDIT FOR THE TIME THAT DEFENDANT WAS HELD IN MEXICO CHALLENGING EXTRADITION."
 {¶ 13} "I. JAIL TIME CREDIT MUST BE GIVEN TO A CRIMINAL DEFENDANT WHO IS EXTRADITED FROM MEXICO FOR THE TIME PERIOD THE DEFENDANT SPENT IN MEXICAN CUSTODY."
 {¶ 14} At his resentencing, Nunez orally moved the court for jail time credit.
 {¶ 15} Nunez refers us to the Mutual Legal Assistance Cooperation Treaty for the proposition that "jail time credit is to be given for the time that a Defendant is detained in the custody of the Country from which the Defendant is being extradited." The provision Nunez references actually governs the transfer of persons for testimonial or identification purposes who are in the custody of the requested Party (Mexico), and it provides, "the person transferred shall receive credit for service of the sentence imposed in the requested Party for time served in the custody of the requesting Party" (United States). This provision has no application to Nunez's appeal. Mutual legal Assistance Cooperation Treaty with Mexico (1987), 1987 U.S.T. Lexis 208, Art. 8.
 {¶ 16} Nunez also refers us to a section of the Protocol to Extradition Treaty with Mexico, which Nunez describes as "somewhat off topic, but illuminating for the purpose of interpreting the U.S. and *Page 6 
U.S. and Mexican Government's desire to give jail time credit." The section Nunez cites again addresses jail time credit when a person, serving a sentence in the "Requested Party," is surrendered to the "Requesting Party" and found not guilty of the offenses charged; the person so surrendered is to receive credit for the time spent in the custody of the "Requesting Party." Protocol to Extradition Treaty with Mexico (1997), 1997 U.S. T. Lexis 106. The section does not apply to Nunez's appeal.
 {¶ 17} "2. WHETHER IT IS WITHIN THE COURT[']S JURISDICTION TO GIVE JAIL TIME CREDIT TO A DEFENDANT OR IF IT IS EXCLUSIVELY WITHIN THE JURISDICTION OF THE ADULT PAROLE AUTHORITY?"
 {¶ 18} Nunez refers us to R.C. 2967.191, which provides that "the department of rehabilitation and correction shall reduce the state prison term of a prisoner * * * by the total number of days that the prisoner was confined for any reason arising out of the offense for which the prisoner was convicted and sentenced, including confinement in lieu of bail while awaiting trial, confinement for examination to determine the prisoner's competence to stand trial or sanity, and confinement while awaiting transportation to the place where the prisoner is to serve the prisoner's term."
 {¶ 19} "R.C. 2967.191is not an inclusive statute, meaning the statute lists situations where credit for time served is applicable, but it does not limit the situations where it is applicable to only those listed in the statute. Thus, even though credit for time served while awaiting extradition is not listed in the statute, it does not preclude a defendant from receiving credit for that time served as long as the reason for the confinement arose out of the offense for which the prisoner was convicted and sentenced." State v. Neville, Belmont App. No. 03 BE 68, 2004-Ohio-6840. See State v. Walker, (May 1, 1998), Montgomery App. No. 16599 (remanding matter to trial court for determination of the number of days defendant was confined in Montana pursuant to an Ohio detainer, since Defendant "had an unquestioned legal right to challenge his extradition, as *Page 7 
Defendant "had an unquestioned legal right to challenge his extradition, as he did via habeas corpus. Nothing in R.C. 2967.191
creates an exception to the jail time credit requirement because a prisoner chooses to exercise rights available to him by law.")
 {¶ 20} "`[I]t is the trial court that makes the factual determination as to the number of days of confinement that a defendant is entitled to have credited toward his sentence.' (Internal citation omitted). Therefore, `alleged errors regarding jail-time credit * * * may be raised by way of the defendant's direct appeal of his criminal case.'" (Internal citations omitted). State v. Nagy, Greene App. No. 2003CA21,2003-Ohio-6903. In Nagy, the defendant, at sentencing, argued that he was entitled to 143 days of jail time credit while the court's probation officer disagreed. "Defendant-Appellant's objection that he is entitled to more jail-time credit than the trial court ordered invoked the Fourteenth Amendment right to equal protection which R.C. 2967.191
enforces. His Fourteenth Amendment right to due process of law then entitled him to a hearing on his objection. Inasmuch as the objection was to the correctness of a factual determination the court is required to make, the court could not overrule the objection on the mere unsworn representations of its probation officer concerning whether Defendant-Appellant's prior incarceration arose out of a set of facts separate and apart from the convictions on which his sentence was imposed.
 {¶ 21} "Defendant-Appellant was not required to file an additional motion. By invoking his R.C. 2967.191 right as entitling him to a particular result, * * * Defendant-Appellant put the court and the state on notice of his claim and the alleged facts upon which the claim was grounded. It then became the State's burden to show that he is not so entitled because some or all of the 143 days for which Defendant-Appellant sought jail-time credit actually arose out of a set of facts separate and apart from the criminal conduct involved in his offense. *Page 8 
 {¶ 22} "* * *
 {¶ 23} "A jail-time credit challenge is more akin to a pretrial motion to suppress evidence, which, though it is grounded on a constitutional right, must nevertheless be presented to the court in the form of a proper application in order for the right to be invoked. And, like a motion to suppress, an objection grounded on a defendant's R.C. 2967.191
right and the court's duty to enforce it is determined on a preponderance of the evidence standard, not the reasonable doubt standard." Nagy.
 {¶ 24} The following colloquy occurred at Nunez's resentencing after Nunez requested jail-time credit for the time he spent in custody in Mexico:
 {¶ 25} "Prosecutor: * * * We have no knowledge and there is no record of Mr. Nunez being in jail other than the jails of the United States when he was finally extradited back, which was a few months prior to this trial.
 {¶ 26} "Also, by statute he's not eligible for jail time credit while * * * extradition is pending in any other jail, be it the United States jail or another country's jail without any sort of record and by statute, we would ask this Court to deny his request.
 {¶ 27} "* * *
 {¶ 28} "Mr. Nunez: Well, I was detained for the Mexican government because for — of these request from the United States and I did almost 11 months, so that's the only — that's all I want to say. I want to get credit for it, `cause I was not doin' time for any other crime and I gotta — I gotta papers if I have to prove it, I got papers that I went to jail.
 {¶ 29} "The Court: * * * I would ask did you voluntarily return or did they have to go through the extradition process, which made * * * this lengthy period of time?
 {¶ 30} "Mr. Nunez: No, I didn't. *Page 9 
 {¶ 31} "The Court: And, I believe statutorily in regard to jail credit, I think you're correct in regard to this. So, your motion will be denied."
 {¶ 32} The trial court, upon Nunez's motion for jail time credit, erred in not conducting a hearing to determine the circumstances of Nunez's incarceration in Mexico and whether jail time credit for the time awaiting extradition was required. We note that Nunez is correct when he argues that a mandamus action against the Department of Corrections for jail time credit will not lie. State ex rel. Rankin v.Ohio Adult Parole Authority, 98 Ohio St.3d 476, 786 N.E.2d 1286,2003-Ohio-2061 ("Alleged errors regarding jail-time credit are not cognizable in mandamus but may be raised by way of the defendant's direct appeal of his criminal case." citing State ex rel. Jones v.O'Connor (1999), 84 Ohio St.3d 426, 704 N.E.2d 1223). Given the violation of Nunez's right to due process, Nunez's second assignment of error is sustained. Judgment reversed and remanded.
WOLFF, P.J. and GRADY, J., concur.
Copies mailed to:
Kirsten A. Brandt
Miguel Angel Santiago, Jr.
 Hon. Michael T. Hall, Administrative Judge *Page 1